## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 23 2019, 10:09 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT, PRO SE

Ronald Williams
Michigan City, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Ronald Williams,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

May 23, 2019

Court of Appeals Case No.
02A03-1712-PC-3000

Appeal from the Allen Superior Court

The Honorable Frances C. Gull, Judge

Trial Court Cause No.
02D04-1503-PC-42
02D06-1304-MR-4

**Pyle, Judge.**

# Case Summary

In 2013, a jury convicted Ronald Williams ("Williams") of murder.[1]  This Court affirmed Williams' conviction on direct appeal.  *See Williams v. State*, No. 02A03-1311-CR-451 (Ind. Ct. App. July 31, 2014), *trans. denied*.  In 2015, Williams filed a pro se petition for post-conviction relief, which was subsequently amended by counsel in 2017.  Following a hearing, the post-conviction court denied Williams relief.  Williams appeals the denial of his petition.  Concluding that none of the errors alleged by Williams amount to ineffective assistance of trial counsel, we affirm the denial of Williams' petition.

# Issue

The sole issue for our review is whether the post-conviction court erred in denying Williams' petition.

# Facts

We set forth the facts as follows in Williams' direct appeal:

> On March 14, 2013, Williams and some of his friends went to an Allen County social club, where they were searched for weapons before they could enter.  After the club closed, Williams drove some friends home.  In the car were Carolyn Bolden, Trisha VanCamp, Dexter King, Quintella Payne, and Mark Young.  Williams first dropped Payne and King at their home.  Williams asked who wanted to be dropped off next.  Young replied that he wanted to be taken to Eden Green.  Williams stated that he did

---

[1] I.C. § 35-42-1-1.

not want to drive there because it was 3:00 a.m. and there were police in the area. Williams and Young got into an argument, which escalated as to which one of them had more "street credit[sic]." Trial Tr. at 158. Williams stopped the car in front of a house and entered it. Upon his return, Williams had his hand in his pocket and drove off. Young stated that he was not scared and that he could shoot Williams in the back of the head. VanCamp reminded Williams that he knew that Young did not have a gun. Williams continued to argue with Young and took a handgun out of his pocket. Williams stopped the car, and Bolden escaped and began to run. Williams and Young stepped out of the car and continued to argue. Williams pointed the gun at Young's chin and chest area. VanCamp exited the car and began to run. As she was running, she heard "five, six, seven" shots. *Id*. at 168. Bolden heard "more than three or four" shots. *Id*. at 208.

Arturo Cruz lived near where Williams had stopped the car. Cruz noticed two men near the car and saw one shoot the other. After the victim fell to the ground, the shooter continued to shoot him. The shooter then drove away. Cruz called the police. When police arrived they found Young lying in the road with multiple gunshot wounds, from which he died. The autopsy showed that Young suffered from a wound behind his left ear, a wound to his right ear, a wound to his lower abdomen, a wound to his left groin, and wounds to his right and left legs.

*Id.* at 2-3.

[3]     The State charged Williams with murder. During the first day of trial, trial counsel Randy Fisher ("Fisher") told the trial court that he was attempting to locate possible witness Jerome Mowrey ("Mowrey"). According to Fisher, Mowrey's mother had told investigators that Mowrey would testify that someone other than Williams had shot Young. The morning of the second day of trial, Fisher explained that his chief investigator had found Mowrey in Ohio

the previous night but that Mowrey was uncooperative and had told the investigator that he did not have any information about the case. Fisher told the trial court that he had decided not to call Mowrey as a witness. Specifically, Fisher explained that the information about Mowrey's knowledge of the case had come from Mowrey's mother and not Mowrey. In addition, Mowrey had been uncooperative and had told the investigator that he did not know anything about the case. Based on these facts and circumstances, Fisher had determined there was no need to "expend [the] resources and jump through those hoops [to compel Mowrey's presence at trial.]" (Trial Tr. at 336).

[4] Also at trial, the State presented State's Exhibit 32, which was a handgun found in the trunk of the vehicle that Williams had been driving when the murder occurred. Williams' children's mother had loaned Williams the vehicle a day or two before the murder. A firearm analyst testified that this handgun was not the murder weapon. Fisher did not object to the admission of the gun into evidence and stated during closing argument that the gun was clearly not the murder weapon. The State did not mention the gun during closing argument. Williams did not testify at trial.

[5] A jury convicted Williams as charged, and the trial court sentenced him to sixty-five (65) years. This Court affirmed Williams' conviction on direct appeal. Williams subsequently filed a pro se petition for post-conviction relief, which was later amended by counsel.

[6]     At the hearing on the amended petition, Fisher testified that he was an experienced attorney who had served both as a prosecutor and as a public defender. Fisher also testified that he had represented Williams on a Class B felony burglary charge that had alleged that Williams had "broken into [the home of] one of the alleged eyewitnesses in the murder case and held that person against their will." (PCR Hearing at 6). Fisher explained that he was concerned that if Williams had testified at his murder trial, he could have potentially opened the door to the allegations that had been made in the B felony burglary. According to Fisher, he was further concerned that if the jury had heard evidence and allegations that Williams had been threatening other witnesses, "certainly that would [have gone] against him for the 12 jurors determining the murder count." (PCR Tr. at 8). Fisher explained that he had shared his concerns with Williams but had also made it very clear that it was Williams' choice whether to testify because it was Williams' constitutional right.

[7]     In addition, Fisher testified that he used an investigator to track down Mowery. Fisher's investigator found Mowery in Ohio during Williams' trial. However, Mowery was "uncooperative," and Fisher determined that Mowery was "not going to be helpful to our case" and decided not to call him as a witness. (PCR Tr. at 21, 23).

[8]     Following the hearing, the post-conviction court issued a twenty-seven page order that denied Williams relief. Williams now appeals pro se the denial of his petition.

# Decision

At the outset, we note that Williams proceeds pro se. A litigant who proceeds pro se is held to the same rules of procedure that trained counsel is bound to follow. *Smith v. Donahue*, 907 N.E.2d 553, 555 (Ind. Ct. App. 2009), *trans. denied*, *cert. dismissed*. One risk a litigant takes when he proceeds *pro se* is that he will not know how to accomplish all the things an attorney would know how to accomplish. *Id.* When a party elects to represent himself, there is no reason for us to indulge in any benevolent presumption on his behalf or to waive any rule for the orderly and proper conduct of his appeal. *Foley v. Mannor*, 844 N.E.2d 494, 502 (Ind. Ct. App. 2006).

We now turn to the merits of Williams' argument that the post-conviction court erred in denying his petition. A defendant who has exhausted the direct appeal process may challenge the correctness of his conviction and sentence by filing a post-conviction petition. *Parish v. State*, 838 N.E.2d 495, 499 (Ind. Ct. App. 2005), *trans. denied*. Post-conviction procedures do not provide an opportunity for a super appeal. *Id.* Rather, they create a narrow remedy for subsequent collateral challenges to convictions that must be based on grounds enumerated in the post-conviction rules. *Id.* Post-conviction proceedings are civil proceedings, and a defendant must establish his claims by a preponderance of the evidence. *Id.*

In reviewing the judgment of a post-conviction court, this Court considers only the evidence and reasonable inferences supporting its judgment. *Hall v. State*,

849 N.E.2d 466, 468 (Ind. 2006). The post-conviction court is the sole judge of the evidence and the credibility of witnesses. *Id.* at 468-69. To prevail on appeal from the denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.* at 469. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will the court's findings or conclusions be disturbed as being contrary to law. *Id.*

[12] Williams argues that the post-conviction court erred in denying his petition because he received ineffective assistance of trial counsel. We review claims of ineffective assistance of trial counsel under the two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). The defendant must show that trial counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms and that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Moody v. State*, 749 N.E.2d 65, 67 (Ind. Ct. App. 2001), *trans. denied.*

[13] Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference on appeal. *Wrinkles v. State*, 749 N.E.2d 1179, 1195 (Ind. 2001), *cert. denied.* Counsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption. *Smith v. State*, 822 N.E.2d 193, 202 (Ind. Ct. App. 2005), *trans. denied.* We will not speculate as to what may or may not have been

advantageous trial strategy as counsel should be given deference in choosing a trial strategy which, at the time and under the circumstances, seems best. *Whitener v. State,* 696 N.E.2d 40, 42 (Ind. 1998).

[14] Further, where, as here, the post-conviction judge is the same judge who conducted the original trial, such a jurist is uniquely situated to assess whether counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and whether, but for counsel's unprofessional conduct, there was a reasonable probability that the jury would have reached a different verdict. *McCullough v. State*, 973 N.E.2d 62, 75 (Ind. Ct. App. 2012), *trans. denied. See also State v. Dye*, 784 N.E.2d 469, 476 (Ind. 2003) (noting that because the judge presided at both the original trial and post-conviction hearing, the judge was in "an exceptional position" to assess weight and credibility of factual evidence and whether defendant was deprived of a fair trial).

[15] Here, Williams first contends that he is entitled to post-conviction relief because his trial counsel was ineffective for "discourag[ing]" him from testifying at trial. (Williams' Br. at 8). The decision whether to testify is personal to the defendant and is a choice that a defendant, and not counsel, controls. *Kimbrough v. State*, 911 N.E.2d 621, 640 (Ind. Ct. App. 2009). Fisher testified at the post-conviction hearing that he was concerned that if Williams had testified at his murder trial, he could have potentially opened the door to the allegations that had been made in a B felony burglary charge. According to Fisher, he was further concerned about the jury hearing evidence and allegations that Williams had been threatening other witnesses. Fisher had shared these concerns with

Williams but had also made it very clear that it was Williams' choice whether to testify. Based on these facts and circumstances, Williams has failed to meet his burden to show that trial counsel rendered deficient performance.

[16] Williams further contends that Fisher was ineffective for failing to subpoena Mowery to testify as a witness at trial. At the post-conviction hearing, Fisher explained that when the investigator found Mowery, Mowery had not been cooperative and that Fisher had decided not to call him as a witness. Deciding which witnesses to call is the "epitome of a strategic decision," *Wrinkles*, 749 N.E.2d at 1200, and such decisions are insufficient to establish ineffective representation. *See Kelly v. State*, 452 N.E.2d 907, 910 (Ind. 1983). Williams has failed to meet his burden to show that trial counsel's performance was deficient because he failed to subpoena Mowery to testify as a witness at trial. Accordingly, he has failed to show that he received ineffective assistance of counsel on this claim.

[17] Lastly, Williams contends that trial counsel was ineffective for failing to object to the admission into evidence of the gun found in the trunk of the car that he was driving on the night of the murder. However, we need not the address the deficient performance prong and will proceed directly to determine whether Williams has met the prejudice prong of his ineffective assistance of counsel claim. *See Helton v. State,* 907 N.E.2d 1020, 1023 (Ind. 2009) (explaining that if we can dismiss an ineffective assistance of counsel claim on the prejudice prong, we need not address whether counsel's performance was deficient). Because Williams has failed to either allege or prove that the result of the

proceedings would have been different had trial counsel objected to the gun, he has failed to meet his burden to show that trial counsel was ineffective.[2]

[18] Affirmed.

[19] Najam, J., and Altice, J., concur.

---

[2] Williams also argues that his post-conviction counsel was ineffective. However, Williams has waived appellate review of this argument because his brief three-sentence argument is supported by neither cogent argument nor adequate citation to authority. *See Smith v. State*, 822 N.E.2d 193, 202-03 (Ind. Ct. App. 2005) ("Generally, a party waives any issue raised on appeal where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record."), *trans. denied*.